# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JASON DONNER,

   *Plaintiff*,

   v.

FOX NEWS NETWORK, LLC.

   *Defendant*.

Civ. No. 1:23-cv-03401-CRC

---

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS

---

KLAPROTH LAW PLLC

Brendan J. Klaproth (D.C. Bar No. 999360)
Jesse C. Klaproth (Bar No. PA0063)
2300 Wisconsin Ave NW, Suite 100(a)
Washington, D.C. 20007
Tel:    202-618-2344
Fax:    202-618-4636
Email: bklaproth@klaprothlaw.com
Email: jklaproth@klaprothlaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................................... 3

III.   STANDARD OF REVIEW ............................................................................................ 10

IV.   ARGUMENT ................................................................................................................... 11

   A.   **PLAINTIFF HAS SUFFICIENTLY PLED A DISCRIMINATION CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count I)** ............................................ 11

     1.   Donner is a Member of a Protected Class ............................................................ 12

     2.   Fox News' Termination Gives Rise to an Inference of Discrimination ................ 16

   B.   **PLAINTIFF HAS SUFFICIENTLY PLED A RETALIATION CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count II)** ........................................ 18

   C.   **PLAINTIFF HAS SUFFICIENTLY PLED AN AIDING AND ABETTING CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count III)** ....................... 22

   D.   **PLAINTIFF HAS SUFFICIENTLY PLED A WRONGFUL TERMINATION CLAIM (Count IV)** ........................................... 25

   E.   **PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS UNDER THE D.C. SICK AND SAFE LEAVE ACT (Count V)** ................................................. 30

V.   CONCLUSION ................................................................................................................ 34

# TABLE OF AUTHORITIES

## CASES

*Alston v. D.C.*,
    561 F. Supp. 2d 29 (D.D.C. 2008) ..................................................................31

*Bartolo v. Whole Foods Mkt. Grp., Inc.*,
    412 F. Supp. 3d 35 (D.D.C. 2019) .................................................................30

*Beckwith v. Career Blazers Learning Ctr. of Washington, D.C., Inc.*,
    946 F. Supp. 1035 (D.D.C. 1996) .............................................................18, 21

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................10

*Blodgett v. Univ. Club*,
    930 A.2d 210 (D.C. 2007) ...........................................................11, 12, 15, 16

*Boulton v. Inst. of Int'l Educ.*,
    808 A.2d 499 (D.C. 2002) .............................................................................24

*Bryant v. Dist. of Columbia*,
    102 A.3d 264 (D.C. 2014) ........................................................................18, 19

*Carl v. Children's Hosp.*,
    702 A.2d 159 (D.C. 1997) .............................................................................26

*Conley v. Gibson*,
    355 U.S. 41 (1957) .........................................................................................10

*Cones v. Shalala*,
    199 F.3d 512 (D.C. Cir. 2000) ......................................................................31

*D.C. v. Bryant*,
    No. 16-CV-1135, 2024 WL 41544 (D.C. Jan. 4, 2024) ...............................19

*Davis v. Cmty. Alternatives of Washington, D.C., Inc.*,

     74 A.3d 707 (D.C. 2013) ...........................................................................25

*Doe 1 v. George Washington Univ.*,
     369 F. Supp. 3d 49 (D.D.C. 2019)..........................................................22

*Doe v. Kipp DC Supporting Corp.*,
     373 F. Supp. 3d 1 (D.D.C. 2019)............................................................23

*Douglas v. Donovan*,
     559 F.3d 549 (D.C. Cir. 2009).................................................................31

*Dura Pharm., Inc. v. Broudo*,
     544 U.S. 336 (2005)................................................................................10

*Equal Rts. Ctr. v. Uber Techs., Inc.*,
     525 F. Supp. 3d 62 (D.D.C. 2021) ..........................................................24

*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*,
     749 A.2d 724 (D.C. 2000) ......................................................................23

*Fed. Trade Comm'n v. Facebook, Inc.*,
     581 F. Supp. 3d 34 (D.D.C. 2022)..........................................................24

*Felton v. Nat'l Ass'n of Soc. Workers*,
     305 A.3d 767 (D.C. 2023) ......................................................................11

*Fingerhut v. Children's Nat. Med. Ctr.*,
     738 A.2d 799 (D.C.1999) ........................................................................25

*Gordon v. U.S. Capitol Police*,
     778 F.3d 158 (D.C. Cir. 2015) ................................................................34

*Grosdidier v. Broad. Bd. of Governors, Chairman*,
     709 F.3d 19 (D.C. Cir. 2013)...................................................................21

*Harbour v. Univ. Club of Washington*,
     610 F. Supp. 3d 123 (D.D.C. 2022).........................................................30

*Holbrook v. Reno*,
     196 F.3d 255 (D.C. Cir. 1999)................................................................30

*Kumar v. D.C. Water & Sewer Auth.*,
    25 A.3d 9 (D.C. 2011) ...................................................................................12

*Leatherman v. Tarrant County Narcotics & Coordination Unit*,
    507 U.S. 163 (1993) ......................................................................................11

*Lee v. Wolfson*,
    265 F. Supp. 2d 14 (D.D.C. 2003) ...............................................................24

*Leyden v. Am. Accreditation Healthcare Comm'n*,
    83 F. Supp. 3d 241 (D.D.C. 2015) ..........................................................25, 26

*Liberatore v. Melville Corp.*,
    168 F.3d 1326 (D.C.Cir.1999) .....................................................................25

*McCaskill v. Gallaudet Univ.*,
    36 F. Supp. 3d 145 (D.D.C. 2014) ....................................................12, 15, 22

*Mitchell v. Baldrige*,
    759 F.2d 80 (D.C. Cir. 1985) .......................................................................32

*Myers v. Alutiiq Int'l Solutions*, LLC,
    811 F. Supp. 2d 261 (D.D.C. 2011) .............................................................25

*Ndondji v. Interpark Inc.*,
    768 F. Supp. 2d 264 (D.D.C. 2011) ........................................................10, 11

*Paschal v. Dist. of Columbia*,
    65 F. Supp. 3d 172 (D.D.C. 2014) ...............................................................31

*Perkins v. WCS Constr., LLC*,
    No. CV 18-751 (RC), 2020 WL 3128950 (D.D.C. June 12, 2020).........25, 26

*Propp v. Counterpart Int'l*,
    39 A.3d 856 (D.C. 2012) ..............................................................................21

*Rosella v. Long Rap, Inc.*,
    121 A.3d 775 (D.C. 2015) ............................................................................25

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)...................................................................................10

*Singletary v. Dist. of Columbia*,
    351 F.3d 519 (D.C. Cir. 2003) ...............................................................31, 32

*Smith v. D.C.*,
    674 F. Supp. 2d 209 (D.D.C. 2009) .............................................................10

*Stella v. Mineta*,
    284 F.3d 135 (D.C. Cir. 2002) .....................................................................12

*Thomas v. District of Columbia*,
    227 F. Supp. 3d 88 (D.D.C. 2016) ...............................................................34

*U.S. Dominion, Inc. v. Fox News Network, LLC*,
    293 A.3d 1002 (Del. Super. Ct. 2023) ......................................................1, 29

*Vasquez v. Whole Foods Mkt., Inc.*,
    302 F. Supp. 3d 36 (D.D.C. 2018) ...............................................................25

*Vreven v. Amer. Ass'n of Retired Persons*,
    604 F. Supp. 2d 9 (D.D.C.2009) ..................................................................25

*Wallace v. Skadden, Arps, Slate, Meagher & Flom*,
    715 A.2d 873 (D.C. 1998) ............................................................................22

*Washington v. Guest Servs., Inc.*,
    718 A.2d 1071 (D.C.1998) ...........................................................................25

## STATUTES

29 U.S.C. § 2615(a)(1)......................................................................................33

42 U.S. Code § 2000e–3 ...................................................................................19

D.C. Code § 2-1401.01 .....................................................................................11

D.C. Code § 2-1401.02(25) ............................................................................12, 14

D.C. Code § 2–1402.11(a) ...................................................................................12

D.C. Code § 2–1402.11(a)(1) ..............................................................................11

D.C. Code § 2-1402.61 ........................................................................................18

D.C. Code § 2-1402.61(a) ...................................................................................19

D.C. Code §§ 2-1402.61(b), (c) ..........................................................................19

D.C. Code § 2–1403.16 .......................................................................................23

D.C. Code § 32-531.03 ........................................................................................32

D.C. Code § 32-531.05 ........................................................................................33

D.C. Code § 32-531.07 ........................................................................................33

D.C. Code § 32-531.08(a) ...................................................................................33

D.C. Code § 32-531.08(b)(4) ..............................................................................30

Plaintiff Jason Donner ("Donner" or "Plaintiff") respectfully opposes the motion to dismiss filed by Defendant Fox News Network, LLC ("Fox News" or "Defendant").[1]

## I.      INTRODUCTION

Fox News knowingly published false stories on the "stolen election" in 2020 and the January 6th insurrection in order to align itself with former President Trump and the Republican Party, which has become captive to Trump. And this is not just argument. Indeed, the "stolen election" claims published by Fox News were proven in a lawsuit to be false, based in part on the testimony and statements of Fox News' executives and reporters that acknowledged the claims to be untrue. *U.S. Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1038 (Del. Super. Ct. 2023). To win back viewership and pledge its loyalty to President Trump, Fox News' corporate leadership purged the news division and those reporters who spoke out against claims of election fraud and/or President Trump. Donner was one of those reporters.

Accordingly, Fox News fired Donner based on his refusal to affiliate with the MAGA/Republican Party, as well as his corresponding affiliation to the Democratic Party. This discrimination based on political affiliation is prohibited by the D.C. Human Rights Act ("DCHRA"). Similarly, Donner refused to disseminate the false narrative pushed by Fox News that the 2020 election had been stolen from former President Trump and that January 6th was a false flag operation to make former President Trump, and his supporters, look bad. He even went a step further to complain about the false reporting on the 2020 election and January 6th insurrection. These complaints were a matter of public concern because they involved conduct that directly endangered the public and members of Congress on January 6th, undermined the U.S.

---

[1]      Fox News' brief in support of its Motion will be referenced hereafter as "Def.'s MTD." Plaintiff's First Amended Complaint will be referred to as "FAC."

electoral system based on false claims of election fraud, and supported insurrectionists that threatened the U.S. government and democracy. Fox News wrongfully terminated Donner in retaliation for his complaints concerning these matters of public concern. Fox News' pretext for the discriminatory and wrongful termination of Donner was that he failed to show up for work when he used paid sick leave. But even this reason given by Fox News constitutes a violation of the D.C. Sick and Safe Leave Act, D.C. Code § 32-531.01, *et seq*.

Fox News has now moved to dismiss Donner's First Amended Complaint. But the common thread that runs through all its arguments is also the reason why the Court must deny the Motion. Fox News is asking the Court to read the facts in its favor, rather than accepting the allegations in the Complaint as true. For example, Fox News makes the factual argument that Donner was not terminated due to his political affiliation as alleged, but instead "because he openly protested FNN's editorial choices." Def.'s MTD at 11. Leaving aside that this factual argument is not tethered to any allegation in the FAC, Fox News' motivation for terminating Donner is a question of fact to be decided by a jury and is inappropriate to consider here on a motion to dismiss. Similarly, with respect to Donner's Sick and Safe Leave Act claim, Fox News argues that Donner was required to give notice under Fox News' policy "as soon as possible" and he failed to do so. Again, whether Donner gave notice of his sick leave "as soon as possible" goes beyond the allegations in the FAC and is ultimately a question to be decided by a jury. Fox News' other arguments also require the Court to interpret facts, weigh evidence, and accept Fox News' interpretation, rather than view the facts in the light most favorable to Donner, as is required on a motion to dismiss.

At bottom, Donner has sufficiently pled claims of discrimination and retaliation under the DCHRA, violations of the D.C. Sick and Safe Leave Act, and the common law tort of wrongful termination. Fox News' Motion must be denied.

## II.     STATEMENT OF FACTS[2]

Donner began working for Fox News in September 2010 as a Desk Assistant. Over the next decade, he was promoted to Associate Producer, Producer, and then Capitol Hill Producer. FAC at ¶ 6. As the Capitol Hill Producer, he was responsible for reporting on events occurring on Capitol Hill in Washington, D.C. Donner prided himself on his journalistic standards of reporting truthfully and accurately. *Id.* at ¶ 7. And while he did not always share the views of Fox News' Opinion page, it did not impact on his ability to report on Capitol Hill News until the lead up to the 2020 election. *Id.*

After the 2020 election though, something changed at Fox News. *Id.* at ¶ 8. Fox News had been the first news outlet to call Arizona for Joe Biden, and as a result, the network faced a swift and strong backlash from President Trump and his supporters. *Id.* President Trump denounced the network as insufficiently loyal to him. As a result, Fox News experienced an immediate drop in its viewership and ratings. *Id.* "To win back viewership and pledge its loyalty to President Trump, Fox's corporate leadership purged the news division and those reporters who spoke out against claims of election fraud." *Id.* at ¶ 10. "Fox News immediately capitulated to President Trump and his supporters by firing Chris Stirewalt, the onscreen reporter during the projection for Arizona." *Id.* at ¶ 8. Next on the chopping block, Bill Sammon, the Vice President and D.C. Managing Editor who had editorial oversight over Fox News' decision to call Arizona, retired over criticism from network executives over his handling of the network's election coverage. *Id.* "Shortly thereafter, approximately 20 journalists were laid off due to what Fox News called a realignment of 'business and reporting structure to meet the demands of this new era.'" *Id.*

---

[2]      For a full recitation of all the pertinent facts, Donner refers to and incorporates herein the allegations in the First Amended Complaint.

And the directive to appease President Trump and his supporters came from the highest levels of corporate leadership. *Id.* at ¶ 9 (texts between Fox News CEO and Lachlan Murdoch that "AZ [call] was damaging" and "today is day one" in the rebuilding process to let the "viewers know we hear them."). And ultimately, "Fox News made the decision to become the bullhorn for President Trump's Make America Great Again ("MAGA") faction of the Republican Party, which included spreading the falsehoods regarding the 2020 election in an effort to overturn the election." *Id.* at ¶ 10. "In the days after the 2020 election, Fox News' reporting became focused on the unsubstantiated stolen election conspiracy advanced by President Trump's supporters." *Id.* at ¶ 16. The "stolen election" claims published by Fox News were proven to be false in the defamation lawsuit brought by Dominion Voting Systems, based in part by the testimony and statements of Fox News' executives and reporters that acknowledged the claims to be untrue. *Id.* But this did not change the fact that reporters were facing pressure from the top-down to push the "election fraud claims." *Id.* For example, Lachlan Murdoch cautioned Fox News' CEO on November 14, 2020, that "[n]ews guys have to be careful how they cover this rally. So far some of the side comments are slightly anti, and they shouldn't be. The narrative should be this is a huge celebration of the president," referring to President Trump. *Id.*

Fox News became a hostile, unwelcoming environment for its news reporters. Chris Wallace stated, "since November of 2020, [doing his job and feeling good about his involvement at Fox] just became unsustainable, increasingly unsustainable as time went on." *Id.* at ¶ 11. Wallace continued, "when people start questioning the truth – Who won the 2020 election? Was Jan. 6 an insurrection? – I found that unsustainable." *Id.*

Geraldo Rivera, who worked as a correspondent and host for Fox News, said the staff "were muzzled." *Id.* at ¶ 12. He said he was suspended three times for "complaining about Tucker

Carlson, when he had the outlandish theory that January 6 was staged, it was a government operative…it was total bullshit. I said it in those words and it was published and I got suspended right there, that day." *Id.* at ¶13.

The purge in the news division came from the top all the way down to the on-the ground reporters, such as Mr. Donner. While covering the November 19, 2020 "crazy" press conference, where Rudy Giuliani and Sidney Powell made statements that Dominion helped steal election from President Trump, Fox News' White House correspondent, Kristin Fisher responded, "That was certainly a colorful news conference from Rudy Giuliani, but it was light on facts," she told viewers. *Id.* at ¶ 17. She stated, "So much of what he said was simply not true, or has already been thrown out in court.…The Trump campaign has yet to provide, at least in court, hard evidence of voter fraud and irregularities widespread enough to overturn the outcome of the election." *Id.* Fisher received an immediate reprimand from her boss, that the "higher-ups at Fox News were also unhappy with it" and that Fisher "needed to do a better job…—this is a quote—'respecting our audiences.'" *Id.* Fisher stated, she had been "punished for doing my job." *Id.*

Donner covered the same press conference. *Id.* at ¶ 18. He tweeted:



*Id.* Like Fisher, Donner was also reprimanded for challenging Giuliani's claims of election fraud.

*Id.* Donner's boss, who had previously praised his work, stated that she would "let it go" but that Donner needed to be "careful moving forward." *Id.*

Fox News' desire to placate its viewers overwhelmed the need to report truthfully on the facts. *Id.* at ¶ 20. On January 5, 2021, Rupert Murdoch wrote to Fox News' CEO, "It's been suggested our prime time three should independently or together say something like 'the election is over and Joe Biden won,' and that such a statement 'would go a long way to stop the Trump myth that the election stolen.'" *Id.* No such statement was made. *Id.* Instead, Fox News had Eric Trump on the air that evening spewing his claims of election fraud. *Id.* And on the evening of January 5, 2021, one Fox News' commentator stated with respect to the Congressional certification of the election results to occur on the following day as, "The Republic, its future, our futures, are hanging in the balance." *Id.* A statement clearly aimed at riling up Trump supporters.

On January 6, 2021, Donner was reporting inside the U.S. Capitol in the Fox News booth above the Senate Radio-TV Gallery Studio. *Id.* at ¶ 21.  Once the insurrectionists breached the Capitol building, Donner, along with other reporters, took refuge in the news booths.  *Id.* A timeline of the events that day relative to Fox News' reporting of those events is striking.

- At 1:50 p.m., D.C. Metropolitan Police declared a "riot" *Id.* at ¶ 21, n.1.
- At 2:11 p.m., the Capitol had been breached by the insurrectionists and minutes later Vice President Pence was evacuated.  *Id.*
- At 2:23 p.m., Fox News reported on television that "it has been peaceful, everything we have seen so far has been nothing but peaceful, but they are definitely fired up. The chant by the way that I heard the most today was, 'Fight for Trump.' That is

clearly what many feel they are doing here, protesting, rallying. We will see where the day goes." *Id.* at ¶ 21.

- At the time shots were fired outside the House Floor, tear gas deployed in the Ohio Clock Corridor, and rioters were present in the Senate Chamber, Fox News reported, "When you hear their voices, you can understand why they were severely disappointed." *Id.*

- At 2:39 p.m., a Fox News commentator stated in response to the insurrectionists breaching the Capitol, Pence being "rushed out of the Chamber," and that tear gas had been fired in the rotunda that "obviously this is a huge victory for these protesters. They have disrupted the system in an enormous way." *Id.*

Donner heard Fox News' false reporting of the insurrection, so he then called the Fox News control room and stated, "I'm your Capitol Hill Producer inside the Capitol where tear gas is going off on the second floor in the Ohio Clock corridor, rioters are storming the building, reports of shots fired outside the House Chamber. I don't want to hear any of this fucking shit on our air ever again because you're gonna get us all killed." *Id.* at ¶ 22.

In the aftermath of January 6th, Fox News further tightened the reins on what was reported by the news division. *Id.* at ¶¶ 23, 25-27. Donner continued to push back on the false reporting. *Id.* In the Spring of 2021, Donner complained to one of his supervisors, Siegfriedt, about Fox News' lack of support for its reporters after the January 6th insurrection. Siegfriedt conveyed to Donner that she had told the D.C. Bureau Chief, Boughton, that Donner "called it demoralizing and struggled to come to work everyday when the network allows those falsehoods to be on the air everyday." *Id.* at ¶ 24.

In late October 2021, Donner complained to D.C. Bureau Chief Boughton about Tucker Carlson's false statements published by Fox News concerning January 6th. Specifically, Donner complained about Tucker Carlson's program, Patriot Purge, that had aired on Fox News' Fox Nation program as consisting of nothing but conspiracy theories proven to be false. *Id.* at ¶ 27. Boughton replied there was "nothing they could do because Tucker had gotten bigger than the

network and was out of control." *Id.* Given the dozens of reporters it fired who were unwilling to falsely report on the 2020 election, it is surprising that Fox News did not believe it had the ability to fire Tucker Carlson, one of its employees.

In the Spring of 2022, Fox News began to discriminate and retaliate against Donner by gaslighting him with generic, false accusations, which his supervisor could not substantiate with any details. *Id.* at ¶ 30. Donner had never received any type of criticism of his performance in the previous five years, despite his work ethic and performance remaining unchanged. *Id.* It became clear to Donner that he was being targeted for speaking out against the false reporting on the election and the January 6th insurrection, and for his political affiliation. *Id.* Fox News' management was pushing a far right-wing agenda in the news division in line with former President Trump's, and the Republican party's, platform. *Id.* Donner would not comply with their demands to inaccurately report on the election and former President Trump, and so he was faced with retaliation. *Id.*

On May 24, 2022, Donner complained to Fox News' HR department and to his direct supervisor in writing. *Id.* at ¶ 31. In addition to complaining about Rohrbeck's criticism of Donner for reporting on topics "the network does not care about", such as Supreme Court Justice Ketanji Brown Jackson's confirmation process, Donner also complained about Fox News' false reporting on January 6th and the hostile work environment it created for new reporters, as shown below:

**Tucker Carlson/January 6th Aftermath**
Fox has not supported its journalists since the January 6, 2021 attack on the Capitol. By allowing highly paid hosts and contributors to make factually false statements about that day is not only demoralizing but creates a hostile work environment. I barely watch our programming or read our website anymore because it's hard to stomach these untruths being aired and written.

I raised my concerns last year multiple times:
- In the spring seperate times to Cherie Grzech and Anita Siegfriedt, who were sympathetic and said they would raise them to upper management.
- Then to Bryan Boughton and HR in the Fall when Tucker Carlson's Patriot Purge aired that showed sympathy to rioters who broke the law and stormed the Capitol and said the rioters were the real victims.
  - They broke the law by entering the Capitol and threatened myself and my co-workers.
  - My colleague was in the House Chamber when shots were fired by Capitol Police to protect House members evacuating.
  - Rioters broke into the building destroying windows and attacked police officers, including one floor below where I was located. They absolutely would have attacked members if they were not evacuated in time.
  - My colleagues and I continued reporting in the Senate Booth with the lights off as I plotted escape paths and potentially using a monopod as a weapon to protect ourselves.
  - Two Capitol Police officers I knew died as a result of January 6th, including one who committed suicide because he was so distraught about what happened.

Our lives were endangered that day. My colleagues and I put our lives at risk covering the story and yet my employer continually allows these lawbreakers to continually be portrayed as victims. It's difficult to feel supported when this is allowed to happen.

*Id.* In August 2022, Donner reiterated his complaints to HR concerning Fox News' inaccurate reporting on the election and January 6th, and the toxic environment it created for reporters. *Id.* at ¶ 32.

On September 26, 2022, Donner called in sick because he was recovering from the COVID vaccine that he recently received. *Id.* at ¶ 33. Donner texted his coworker to let her know that he would be out sick and then spoke with his supervisor, Japaridze, to inform her that he would be out sick. *Id.* "His illness was unforeseeable, and he requested leave in accordance with Fox News' policy, the request was prior to the start of his workday, and the request was within 24 hours of the onset of his unexpected, emergent illness." *Id.*

On September 27, 2022, Donner's supervisor, Japaridze, called him yelling that Donner was irresponsible and "faulted Donner for calling in sick the day before when he was recovering from the COVID vaccine." *Id.* at ¶ 34.

On September 28, 2022, Donner met with D.C. Bureau Chief Boughton and HR. *Id.* at ¶ 35. Boughton told Donner that he was fired because he was late for work and did not show up for work, which Donner understood to be referring to his sick leave on September 26, 2022. *Id*. This was a pretextual firing based on Donner's political affiliation, his refusal to falsely report on the 2020 election and January 6th to placate former President Trump and his supporters, and for his engaging in protected activity. *Id.* at ¶ 36. Fox News sought to purge the news division that would not get in line with the direction to only report information in line with the MAGA/Republican platform, and so Donner was unlawfully fired. *Id.*

### III.     STANDARD OF REVIEW

All that the Federal Rules of Civil Procedure require of a complaint is that it contain a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Smith v. D.C.*, 674 F. Supp. 2d 209, 210 (D.D.C. 2009) (internal quotations omitted) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The notice-pleading rules are "not meant to impose a great burden upon a plaintiff," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005), and they must thus be given every favorable inference that may be drawn from the allegations of fact. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 584 (2007).  For a plaintiff to survive a 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56 (*citing Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "When the sufficiency of a

complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor." *Ndondji v. Interpark Inc*., 768 F. Supp. 2d 264, 271 (D.D.C. 2011) (citing *Leatherman v. Tarrant County Narcotics & Coordination Unit*, 507 U.S. 163, 164 (1993)).  Plaintiff has met this pleading standard with respect to each of his claims.

## IV.    ARGUMENT

### A.  PLAINTIFF HAS SUFFICIENTLY PLED A DISCRIMINATION CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count I)

The DCHRA was "designed to 'secure an end ... to discrimination' for any reason beyond merit and thereby expand remedies for discrimination beyond those granted by Title VII, 42 U.S.C. § 2000e-2(a) (2003)." *Felton v. Nat'l Ass'n of Soc. Workers*, 305 A.3d 767, 770 (D.C. 2023) (citing D.C. Code § 2-1401.01).[3]  The D.C. Court of Appeals has held "that the DCHRA is a 'broad remedial statute' that is 'to be generously construed' in favor of the employee." *Id.* It is a "powerful, flexible, and far-reaching prohibition against discrimination of many kinds." *Blodgett v. Univ. Club,* 930 A.2d 210, 218 (D.C. 2007). One such form of discrimination that is prohibited under the DCHRA is discrimination based on a person's political affiliation.

Under the DCHRA, it is an "unlawful discriminatory practice" to "discharge…, or otherwise discriminate against any individual, with respect to his or her compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his or her employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his or her status as an employe" on the basis of membership in a protected class."   D.C. Code § 2–1402.11(a)(1). To establish an

---

[3] All internal citations and quotation marks are omitted, and all emphasis is added hereinafter unless otherwise noted.

employment discrimination claim under the DCHRA, an employee, such as Donner, must establish: "(1) []he is a member of a protected class; (2) []he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 152 (D.D.C. 2014) (citing *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002)); *Kumar v. D.C. Water & Sewer Auth.*, 25 A.3d 9, 17 (D.C. 2011)

Fox News concedes, by not arguing, that Donner suffered an adverse employment action, thereby satisfying the second element. Instead, Fox News takes issue with the first (member of a protected class) and third (inference of discrimination) elements, which are discussed in turn below.

### 1. Donner is a Member of a Protected Class

Under the DCHRA, "political affiliation" constitutes a protected class. D.C. Code § 2–1402.11(a). Indeed, it is "an unlawful discriminatory practice" to discriminate against an individual "based upon the actual or perceived…political affiliation." *Id.* "Political affiliation" is defined as "the state of belonging to or endorsing any political party." D.C. Code § 2-1401.02(25). "Political party" is undefined by the DCHRA but it is to be given meaning within the "'ordinary sense and with the meaning commonly attributed' to that term." *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 153 (D.D.C. 2014). The Court of Appeals looked to the D.C. Code and U.S. Code which treat "political parties" as "those groups that nominate candidates for recognized public elections." *Id.* at 154-154 (citing *Blodgett*, 930 A.2d at 221 n. 10).

Here, Donner alleged that he was affiliated with the Democratic party in the 2020 election, and that he refused to affiliate with the MAGA/Republican party. FAC at ¶ 42.  On the other hand, after the 2020 election, "Fox News became the bullhorn for the MAGA faction of the Republication Party led by President Trump." FAC at ¶ 40. "Fox's corporate leadership purged the

news division and those reporters who spoke against the MAGA propaganda (*e.g.* false claims of election fraud, January 6th conspiracies, etc.), or those who did not support the messaging of the MAGA faction of the Republican Party." *Id.* "The reporters who were not willing to endorse or support [the] MAGA faction of the Republican Party and the falsehoods propagated by MAGA, were purged from Fox News." *Id.* "Donner was one of those reporters." *Id.* Indeed, "Fox News had established a political litmus test for continued employment – support the MAGA/Republican view or lose your job – Donner failed that test and was fired. *Id.* at ¶ 42. As such, Fox News discriminated against Donner based on his political affiliation. *Id.* at ¶ 43.

Based on these allegations, Donner has sufficiently pled a claim of discrimination based on his political affiliation. Nevertheless, in its Motion, Fox News' ignores the allegations in the FAC and instead offers its own version of the facts, which is improper on a motion to dismiss.

*First*, Fox News makes the factual argument that Donner was not terminated due to his political affiliation as alleged, but instead "because he openly protested FNN's editorial choices." Def.'s MTD at 11. Leaving aside that this is found nowhere in the FAC, such an argument is a red herring. It is not the editorial choices at issue in this case, it is the discriminatory personnel decisions made by Fox News based on their reporter's political affiliation, or stated differently, Donner's refusal to affiliate with the MAGA/Republican Party. FAC at ¶¶ 10, 15, 40, 42, 43.

*Second*, Fox News argues Donner failed to allege a "political affiliation" and that Fox News knew of his political affiliation. Def.'s MTD at 12, 14. Once again, this argument ignores the allegations in the complaint. FAC at ¶ 42 ("Donner affiliated with the Democratic party…by supporting Democratic candidates); *Id.* at ¶ 41 ("Fox News knew that Donner was not affiliated with the MAGA faction of the Republican party based on his complaints on Fox News' false reporting on claims of election fraud, January 6th conspiracy theories, and "Fox News' pushing of

the platform for the MAGA faction of the Republican party."); *Id.* at ¶ 22 (in response to Fox News' covering of the January 6th insurrection, Donner stated, "I don't want to hear any of this fucking shit on our air ever again because you're gonna get us killed."). Fox News inaccurately claims Donner must plead that he "actually joined or outwardly endorsed the Democratic party." Def.'s MTD at 12. No such requirement exists in the DCHRA. "Political affiliation" necessarily only requires an affiliation with a political party or "endorsing any political party." D.C. Code § 2–1401.02(25). By alleging that he affiliated with the Democratic Party in the 2020 election, and supported the political party in that election, he has sufficiently pleaded "political affiliation" under DCHRA. Moreover, it is not just his political affiliation with the Democratic party that constitutes protected activity, but also his refusal to affiliate with the MAGA/Republican party.

*Third*, Fox News argues that the "DCHRA does not apply to preferences for certain 'factions' or views *within* a political party." Def.'s MTD at 13. Therefore, according to Fox News, "Plaintiff's alleged opposition to the MAGA faction of the Republican party" is not protected activity. *Id.* Again this argument ignores the allegations in the FAC. As alleged, "[t]he MAGA faction of the Republican Party and/or the Republican Party constitute a 'political party' under D.C. Code § 2–1401.02(25)." FAC ¶ 38.  On January 6, 2021, former President Trump stated "[w]ith your help over the last four years, we built the greatest political movement in the history of our country and nobody even challenges that…There's never been a movement like that… We must stop the steal and then we must ensure that such outrageous election fraud never happens again, can never be allowed to happen again." *Id.* This MAGA movement, "took over the Republican party," thereby making the MAGA faction "the de facto Republican party." *Id.* In other words, MAGA is synonymous with the Republican party. Not only is this alleged in the FAC, but any observer to current events would be unable to reasonably dispute this.

But more importantly, although "political views" are not protected under the DCHRA, political views are evidence of political affiliation. For example, if an employer fired an individual because that person supported President Biden, it would be unlawful under the DCHRA. Although supporting President Biden is not a "political affiliation," it is evidence of an individual's affiliation with the Democratic party as he was the Democratic presidential candidate in the 2020 election, and presumably the 2024 election. And ultimately, it is a jury question whether that, by a preponderance of the evidence, constitutes discrimination based on political affiliation.

Similarly, former President Trump was the Republican presidential candidate in the 2020 election, and likely will be for the 2024 election. Supporting (or opposing) Donald Trump is evidence of affiliation with (or opposition to) the Republican party. This is especially the case because the MAGA movement created by former President Trump "took over the Republican Party" making the "MAGA faction…the de facto Republican party." FAC at ¶ 38.  By refusing to affiliate with the MAGA/Republican party and the propaganda and falsehoods disseminated by Fox News, Donner engaged in protected activity.

As a final point, Fox News cites *McCaskill* and *Blodgett* extensively, but its reliance is misplaced as both cases are easily distinguishable. In *McCaskill*, the plaintiff, Gallaudet University's Chief Diversity Officer, alleged that she had been demoted for signing a petition to place Maryland's Proposition 6—a state constitutional amendment to ban same-sex marriage—on the ballot. *McCaskill*, 36 F. Supp. 3d at 149. The plaintiff failed to state a claim of discrimination based on political affiliation, however, because she never alleged that the university took adverse action against her based on her political affiliation, but instead it did so based on her signing a petition. Unlike *McCaskill*, Donner here has alleged that Fox News discriminated against him based on his political affiliation, as well as his refusal to endorse the MAGA/Republican party.

In *Blodgett*, the plaintiff was expelled from the University Club because the plaintiff used the "Club's facilities to conduct business with persons who publicly expound racist and anti-Semitic views." *Blodgett*, 930 A.2d at 214. Specifically, the Club expelled the plaintiff for: "(1) his repeated use of offensive racial and ethnic slurs while on Club premises; (2) his non-joking references to and comments about women, African Americans, Jews and Native Americans in a derogatory and offensive manner while on Club premises and (3) his use of the Club's facilities to conduct business with persons who publicly expound racist and anti-Semitic views." *Id.* at 216. Although the plaintiff had been expelled, in part, "based on his affiliation with the National Alliance," (a white supremacist group), he offered "no evidence that the National Alliance is a political party." *Id.* at 221.

*Blodgett* is a far cry from this case. Here there is no dispute that the Democratic party with which Donner affiliated, and the Republican party, with which Donner refused to affiliate, constitute political parties. And Donner has come forward with sufficient factual content to show that MAGA has become the de facto Republican party. FAC at ¶ 39 and at n. 2.

Thus, Donner has sufficiently pled that he is a member of a protected class by affiliating and supporting the Democratic party, and by refusing to affiliate with the MAGA/Republican party.

### 2.    Fox News' Termination Gives Rise to an Inference of Discrimination

With respect to the third element of a DCHRA discrimination claim, Fox News argues that Donner failed to allege that the adverse actions taken by Fox News were discriminatory. Def.'s MTD at 15. Not so. As discussed above, the highest levels of leadership at Fox News and Fox Corporation made a decision in the wake of the backlash from Trump supporters after Fox News called Arizona for Joe Biden to vow fealty to former President Trump and his supporters. FAC at ¶¶ 8-10. "Fox News immediately capitulated to President Trump and his supporters by firing Chris

Stirewalt, the onscreen reporter during the projection for Arizona." *Id.* at ¶ 8. "Similarly, Bill Sammon, the Vice President and D.C. Managing Editor who had editorial oversight over Fox News' decision to call Arizona for Joe Biden, retired over criticism from network executives over his handling of the network's election coverage." *Id.* "Shortly thereafter, approximately 20 journalists were laid off due to what Fox News called a realignment of 'business and reporting structure to meet the demands of this new era.'" *Id.* "One Fox News executive stated that Sammon did not understand "the impact to the brand and the arrogance in calling AZ," and that it was "astonishing" given that it was Sammon's job to protect the brand." *Id.*

"To win back viewership and pledge its loyalty to President Trump, Fox's corporate leadership purged the news division and those reporters who spoke out against claims of election fraud, such as Mr. Stirewalt, and who did not support the messaging of the MAGA faction of the Republican Party." FAC at ¶ 10. Some of the top reporters at Fox News, such as Chris Wallace and Geraldo Rivera, found the environment to be unsustainable and prevented them from doing their job. *Id* at ¶¶ 11-12. Mr. Rivera said he was "muzzled" and was suspended three times for complaining about Tucker Carlson and the falsehoods he was spreading about January 6th.  *Id.* at ¶¶ 13-14.

Donner was also caught up in the purge in the news division for those speaking out against the MAGA propaganda and falsehoods being spread by Fox News. For example, Fox News' White House correspondent, Kristin Fisher, reported on the November 19, 2020, press conference where Rudy Giuliani and Sidney Powell stated that Dominion helped in stealing the election from President Trump. FAC at ¶ 17. Fisher stated, "That was certainly a colorful news conference from Rudy Giuliani, but it was light on facts." she told viewers, "[s]o much of what he said was simply not true, or has already been thrown out in court. … The Trump campaign has yet to provide, at least in court, hard evidence of voter fraud and irregularities widespread enough to overturn the outcome of the election." *Id.* Fisher received an immediate reprimand for not "respecting our audiences," and according to Fisher, she had been "punished for doing my job." *Id.*

17

Donner faced the same reprisal for his covering of the same press conference. Donner tweeted, "[a]t this presser, Rudy Giulian keeps claiming voter fraud in Philadelphia, but he said this to a Pennsylvania Court: "This is not a fraud case." FAC at ¶ 18. Donner was also immediately reprimanded and punished for sending this tweet.

Fox News fired approximately 20 journalists from its news division for refusing to publish the MAGA/Republican propaganda and falsehoods on the "stolen election" and January 6th. Fox News' corporate leadership openly pledged its loyalty to former President Trump and his supporters. Chris Wallace and Geraldo Rivera stated that it became impossible to do their jobs and that Mr. Rivera had been retaliated against for complaining about Tucker Carlson's false reporting on January 6th. Mr. Donner complained about Tucker Carlson's false reporting on January 6th, and he was retaliated against for reporting on the November 19th press conference. These facts lead to the reasonable inference that Fox News fired Donner for his affiliation with the Democratic party, and his refusal to affiliate with the MAGA/Republican party and the falsehoods propagated by them.

Thus, Plaintiff has sufficiently pleaded that Fox News' decision to terminate Donner was motivated by his political affiliation. Fox News' Motion should be denied as to Count I.

## B.  PLAINTIFF HAS SUFFICIENTLY PLED A RETALIATION CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count II)

Under the DCHRA:

> (a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

D.C. Code § 2-1402.61. A retaliation claim under the DCHRA (D.C. Code § 2-1402.61) has the same elements as a claim of retaliation under the federal discrimination laws. *Bryant v. Dist. of Columbia,* 102 A.3d 264, 268 (D.C. 2014); *see also Beckwith v. Career Blazers Learning Ctr. of*

*Washington, D.C., Inc.*, 946 F. Supp. 1035, 1041 (D.D.C. 1996).[4] A *prima facie* claim of retaliation requires a plaintiff to show:

> (1) [plaintiff] was engaged in a protected activity; (2) the employer took an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse action.

*Bryant,* 102 A.3d at 268. D.C. law differs from Title VII, however, with respect to the third element. To establish the causation element, the DCHRA does not require "but for" causation but instead requires the lower standard that the retaliation be a "substantial factor." *D.C. v. Bryant*, No. 16-CV-1135, 2024 WL 41544, at *5 (D.C. Jan. 4, 2024).

Here, Fox News concedes that the second and third elements have been sufficiently pled as they only move dismissal on the first element claiming that Plaintiff failed to plead that he engaged in protected activity. Def.'s MTD at 16-18. Fox News is wrong.

As Fox News acknowledged, Donner engaged in six separate instances of protected activity:

> Plaintiff engaged in protected activity by complaining of Fox News' false reporting on the 2020 election and January 6th, its advocacy for President Trump, and its advocacy of the far-right wing, radical conservative views of the MAGA faction of the Republic Party. Plaintiff engaged in this protected activity: (1) on November 19, 2020 when he tweeted about Giuliani's inconsistent statements made during a press conference regarding election fraud; (2) on January 6, 2021 during the insurrection on the Capitol; (3) in the Spring of 2021 when he complained to Anita Siegfriedt regarding the false claims being reported on Fox News regarding the election and January 6th; (4) in later October 2021 when he complained to the D.C. Bureau Chief Boughton about the false reporting on

---

[4]     The DCHRA retaliation provision is broader than Title VII's retaliation provision as it covers not just "retaliation" but also makes it unlawful to "coerce," "threaten," "interfere with" a person's rights under the DCHRA.  *Compare* D.C. Code § 2-1402.61(a); *with* 42 U.S. Code § 2000e-3. Similarly, it is also unlawful under the DCHRA to not just retaliate, but also to "require, request, or suggest that a person retaliate against, interfere with, intimidate or discriminate against a person" and to "to cause or coerce, or attempt to cause or coerce" someone to violate the DCRHA. D.C. Code §§ 2-1402.61(b), (c).

election fraud and January 6th conspiracies; (5) on May 24, 2022 when Donner complained in writing to Fox News' HR department and to his direct supervisor NuNu Japaridze about the false reporting on January 6th; and (6) on August 2022 when Donner met with HR to complain about the false reporting by Tucker Carlson and the toxic environment it created for reporters that did not share those political views or affiliation. When Donner complained, he had a good-faith reasonable belief that Fox News was violating the D.C. Human Rights Act by discriminating against its employees based on their political affiliation and views. Specifically, by purging its news divisions of reporters who were unwilling to support, endorse, or affiliate with the MAGA faction of the Republic Party, Fox News discriminated in violation of the D.C. Human Rights Act.

FAC at ¶ 49.  Donner's written complaint on May 24, 2022 (reprinted below), in which he describes the "hostile work environment" created by Fox News not supporting its journalists but instead allow factually false statements to be aired and written:

**Tucker Carlson/January 6th Aftermath**

Fox has not supported its journalists since the January 6, 2021 attack on the Capitol. By allowing highly paid hosts and contributors to make factually false statements about that day is not only demoralizing but creates a hostile work environment. I barely watch our programming or read our website anymore because it's hard to stomach these untruths being aired and written.

I raised my concerns last year multiple times:
- In the spring seperate times to Cherie Grzech and Anita Siegfriedt, who were sympathetic and said they would raise them to upper management.
- Then to Bryan Boughton and HR in the Fall when Tucker Carlson's Patriot Purge aired that showed sympathy to rioters who broke the law and stormed the Capitol and said the rioters were the real victims.
    - They broke the law by entering the Capitol and threatened myself and my co-workers.
    - My colleague was in the House Chamber when shots were fired by Capitol Police to protect House members evacuating.
    - Rioters broke into the building destroying windows and attacked police officers, including one floor below where I was located. They absolutely would have attacked members if they were not evacuated in time.
    - My colleagues and I continued reporting in the Senate Booth with the lights off as I plotted escape paths and potentially using a monopod as a weapon to protect ourselves.
    - Two Capitol Police officers I knew died as a result of January 6th, including one who committed suicide because he was so distraught about what happened.

Our lives were endangered that day. My colleagues and I put our lives at risk covering the story and yet my employer continually allows these lawbreakers to continually be portrayed as victims. It's difficult to feel supported when this is allowed to happen.

FAC at ¶ 31. Fox News argues that none of Donner's complaints concern discriminatory conduct by Fox News but instead concern a "news organization's decisions concerning how to cover current events [which] are exercises of journalist prerogatives." Def.'s MTD at 18. Fox News takes a rather rosy view of spreading of falsehoods regarding a "stolen election" and the entirely manufactured claim by one of its reporters that the January 6th insurrection was a false flag operation. Leaving that aside, filing a complaint under the DCHRA, "regardless of the merits is a statutorily protected activity under…the DCHRA." *Beckwith*, 946 F. Supp. at 1042. Indeed, even if the "employer's practices do not amount to a violation" of the law, an employee still engaged in protected activity if the employee "reasonably and in good faith believed the practice was unlawful under the statute." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013); *see also Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012) ("an employee is protected from retaliation even if the employer's conduct alleged to be discriminatory is lawful, so long as the employee reasonably believed the employer's action was discriminatory").

Donner alleged that his complaints were reasonable and in good faith, and that "Fox News was violating the D.C. Human Rights Act by discriminating against its employees based on their political affiliation and views." FAC at ¶ 49. "[B]y purging its news divisions of reporters who were unwilling to support, endorse, or affiliate with the MAGA faction of the Republican Party" or push its "far-right wing, ultra conservative, pro-Trump, pro-MAGA Republican agenda," Fox News discriminated in violation of the D.C. Human Rights Act. *Id.* at ¶¶ 49-50. And for opposing those discriminatory practices of Fox News, Fox News retaliated against Donner. *Id.* at ¶ 50.

Thus, Donner has sufficiently pleaded a retaliation claim under the DCHRA.

### C.  PLAINTIFF HAS SUFFICIENTLY PLED AN AIDING AND ABETTING CLAIM UNDER THE D.C. HUMAN RIGHTS ACT (Count III)

Fox News attempts to short-circuit this case by advancing the legally unsound argument that Plaintiff's aiding and abetting claims in Count II must be dismissed because a defendant cannot aid and abet his/her/its own discriminatory conduct. Def.'s MTD at 18. Fox News misses the mark again. This argument has been made by other defendants and rejected. *Doe 1 v. George Washington Univ.*, 369 F. Supp. 3d 49, 86 (D.D.C. 2019).

In addition, the Court of Appeals has held that individuals/supervisors that "carried out the allegedly discriminatory acts aided and abetted the employer's discrimination." *Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 888 (D.C. 1998) "An aider or abettor is one who 'in some sort associate[s] himself with the venture, ... participate[s] in it as something he wishe[s] to bring about, [and] seek[s] by his action to make it succeed.'" *Id.* A claim for aiding and abetting has been sufficiently pled here where it is alleged that the "defendants participated in the discrimination and sought to make it succeed." *Id.* Similarly, if the "plaintiff's supervisor knew or should have known that plaintiff was being sexually harassed, and if he repeatedly refused to take prompt action to end the harassment," this would constitute aiding and abetting. *Id.*

Further, Defendants' reliance on *McCaskill v. Gallaudet Univ.*, 36 F. Supp. 3d 145, 157 (D.D.C. 2014) is misplaced. In *McCaskill*, the plaintiff alleged that the sole defendant is the only person/entity that discriminated against the plaintiff. *McCaskill*, 36 F. Supp. 3d at 157. Because there was only one party that allegedly discriminated against the plaintiff, a claim for aiding and abetting made no logical sense because a single entity cannot aid or abet itself. *Id.* This is not the situation here though as there are multiple parties that discriminated and retaliated against Donner and aided each other in doing so. FAC at ¶¶ 54-55 ("Fox News, Boughton, Rohrbeck, and Japaridze unlawfully aided and abetted the discriminatory conduct of one another.").  For example,

Japaridze may have urged Boughton to terminate Donner because she may have needed his approval to do so. On the other hand, both Japardize and Boughton may have aided and abetted one another, as well as Fox News, in the discriminatory/retaliatory firing. And finally, Fox News aided and abetted the discriminatory firing by Boughton and Japardize through its policy of purging the news division of any staff that would not get in line with the directive to only report information that appeased the Trump supporters and former President Trump. The same way an individual/entity can commit fraud and conspire to commit fraud, a person can discriminate and also aid and abet discrimination. Based on the Court of Appeals' precedent, Plaintiff has sufficiently pled aiding and abetting claims against Fox News.

In addition, Fox News argues that Donner's aiding and abetting claim is time-barred because the acts of Rohrbeck, Boughton, and Japaridze (with the exception of the termination) all occurred prior to September 28, 2022, outside the one-year statute of limitations. Def.'s MTD at 20.  Fox News is correct that claims under the D.C. Human Rights Act have a one-year statute of limitations, but they conveniently omit the fact that the discovery rule is written directly into the statute:

> private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, ***or the discovery thereof***.

*Compare* Def.'s MTD at 20 (emphasized language omitted); *with* D.C. Code § 2–1403.16. And ultimately, a statute of limitations defense is an affirmative defense that is typically inappropriate for resolution on a motion to dismiss as it requires the resolution of factual issues, namely when the plaintiff discovered the unlawful conduct or could have discovered it through the exercise of reasonable diligence.  *Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 734 (D.C. 2000); *see Doe v. Kipp DC Supporting Corp.*, 373 F. Supp. 3d 1, 7 (D.D.C. 2019) ("motions to

dismiss based on a statute of limitations defense are generally disfavored, and the D.C. Circuit has 'repeatedly held [that] courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint.'").

Moreover, issues involving the discovery rule, which are factually intensive, are inappropriate to resolve on a motion to dismiss. *Lee v. Wolfson*, 265 F. Supp. 2d 14, 19 (D.D.C. 2003) ("Since determining when a claim accrues is a question of fact, it is for jury and not the court to decide") and (collecting Court of Appeals cases).

In addition, Fox News' attempt to carve out its discriminatory conduct based on the statute of limitations falls flat. "[I]t is well established that where, as here, a plaintiff alleges that the defendant has systematically discriminated against individuals on a continuous basis, the claim is timely if the plaintiff shows a pattern of discrimination that persists 'both before and during the statutory period.'" *Equal Rts. Ctr. v. Uber Techs., Inc*., 525 F. Supp. 3d 62, 89 (D.D.C. 2021) (quoting *Boulton v. Inst. of Int'l Educ*., 808 A.2d 499, 503–04 (D.C. 2002)). There is no dispute that Donner alleged a pattern of continuous discrimination after the 2020 election that continued right up until his firing. FAC at ¶¶ 8-36. There is also no dispute that the discriminatory firing occurred during the limitations period.  Thus, under the continuing violation doctrine, Donner's claim is timely.

And as a final point, Fox News' attempt to dismiss part of Donner's discrimination claim as untimely is improper on a motion to dismiss and is tantamount to a premature motion *in limine*. *Fed. Trade Comm'n v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022) (piecemeal dismissal of parts of claims is improper under Rule 12(b)(6)). "Rather, 'the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief.'" *Id.* Donner's claim is timely and sufficiently pled. Accordingly, there is no basis to dismiss part of his

claim as untimely.

### D. PLAINTIFF HAS SUFFICIENTLY PLED A WRONGFUL TERMINATION CLAIM (Count IV)

"The District of Columbia recognizes a common law tort of wrongful discharge 'as an exception to the traditional at-will doctrine governing termination of employment, where the discharge violates a 'clear mandate of public policy.'" *Vasquez v. Whole Foods Mkt.*, Inc., 302 F. Supp. 3d 36, 54 (D.D.C. 2018). The public policy exception to the at-will doctrine is narrow, and so a:

> court should consider seriously only those arguments that reflect a clear mandate of public policy—i.e., those that make a clear showing, based on some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

*Rosella v. Long Rap, Inc.*, 121 A.3d 775, 778 (D.C. 2015). To establish a wrongful termination claim, "a plaintiff must both (1) point to 'some identifiable policy that has been officially declared in a statute or municipal regulation, or in the Constitution,' and (2) show that there is 'a close fit between the policy and the conduct at issue in the allegedly wrongful termination.'" *Perkins v. WCS Constr., LLC*, No. CV 18-751 (RC), 2020 WL 3128950, at *3 (D.D.C. June 12, 2020); *see also Davis v. Cmty. Alternatives of Washington, D.C., Inc.*, 74 A.3d 707, 709 (D.C. 2013).

Courts have applied this public policy exception to a number of situations, such as, a threat to report pharmaceutical company's violations of drug storage regulations,[5] reporting potential tax violations for a non-profit,[6] protesting food contamination in a nursing home,[7] reporting a bribe,[8]

---

[5]    *Liberatore v. Melville Corp.,* 168 F.3d 1326, 1329 (D.C.Cir.1999)
[6]    *Vreven v. Amer. Ass'n of Retired Persons*, 604 F .Supp. 2d 9, 13 (D.D.C.2009)
[7]    *Washington v. Guest Servs., Inc*., 718 A.2d 1071, 1072 (D.C.1998)
[8]    *Fingerhut v. Children's Nat. Med. Ctr.*, 738 A.2d 799, 801 (D.C.1999)

assisting an investigation into federal contracting violations,[9] and testifying before the D.C. Council regarding patients' rights.[10] *Leyden v. Am. Accreditation Healthcare Comm'n*, 83 F. Supp. 3d 241, 249 (D.D.C. 2015) (collecting and summarizing cases). As this Court concluded, the takeaway from these cases is that there must be the "existence of specific laws or regulations that clearly reflect a policy prohibiting the activity about which the employee complained, whether or not the employer actually violated the law or regulation." *Id.*

Applying this rule, this Court recently found the plaintiff stated a wrongful termination claim where the plaintiff complained about a coworker's violent threats made about a third party. *Perkins v. WCS Constr., LLC*, No. CV 18-751 (RC), 2020 WL 3128950, at *5 (D.D.C. June 12, 2020). The plaintiff stated a wrongful termination claim because she identified three criminal statutes implicated by her complaint. *Id.* (assault and threatened assault, D.C. Code § 22-404(a)(1)), affray (D.C. Code § 22-1301), threatened kidnapping or threatened injury to another or their property (D.C. Code § 22-1810), and obstructing or interfering with the report of a criminal offense to a law enforcement agency through force or intimidation (D.C. Code § 22-1931)). The court found the plaintiff stated a wrongful termination claim because "the District of Columbia laws criminalizing threatened assault and threatened injury (at a minimum) 'clearly reflect a policy prohibiting the activity about which the employee complained.'" *Id.*

Donner here has sufficiently pleaded a wrongful termination claim. "Fox News retaliated against him for complaining about Fox News' false reporting on the 2020 election, Fox News' false reporting on the January 6th insurrection, Tucker Carlson's false reporting on the January 6th insurrection, that Fox News would allow Carlson to gaslight the country with false information,

---

[9]    *Myers v. Alutiiq Int'l Solutions*, LLC, 811 F. Supp. 2d 261, 272 (D.D.C.2011)
[10]   *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997)

and for pushing a far-right wing agenda that was unsupported by verified information to appeal to their viewers." FAC at ¶ 61. Donner alleged, "[t]hese complaints were a matter of public concern because they involved conduct that directly endangered the public and members of Congress on January 6th, undermined the U.S. electoral system based on false claims of election fraud, and supported insurrectionists that imperiled the U.S. government and democracy." *Id.*

Donner identified specific constitutional provisions and statutes prohibiting the activity about which he complained: (1) Section Three of the Fourteenth Amendment to the United States Constitution (prohibition on an individual running for a federal office who engaged in insurrection or rebellion); (2) 18 U.S.C § 2383 (criminal statute prohibiting rebellion or insurrection; (3) D.C. Code § 22-1322 (criminal statute prohibiting rioting); (3) the actual criminal charges against former President Trump and the January 6th, insurrectionists (18 U.S.C § 2383, 18 U.S.C. § 2384, 18 U.S.C. § 2101, 18 U.S.C. § 1752, 18 U.S.C. § 1361, 18 U.S.C. § 231, 18 U.S.C. § 111, 18 U.S.C. § 5104, 18 U.S.C. § 1512, 18 U.S.C. § 1512(k), 18 U.S.C. § 371, and 18 U.S.C. § 241); (4) the election interference charges in Georgia (Ga. Code § 16-14-4(c), Ga. Code § 16-4-7, Ga. Code § 16-10-1, Ga. Code § 16-10-20, Ga. Code § 16-10-21, Ga. Code § 16-4-8, Ga. Code § 16-10-23, Ga. Code § 16-4-1, Ga. Code § 16-10-20.1, Ga. Code § 93, Ga. Code § 21-2-603, and Ga. Code § 21-2-566); and (5) the Twelfth Amendment to the U.S. Constitution and 3 U.S.C. § 15, both of which govern the peaceful transfer of power and the Congressional proceedings of counting the electoral votes on January 6th. FAC at ¶¶ 62-65.

Looking past these allegations, Fox News tries to recast Donner's complaints as "boiling down to his own disagreement with FNN's news and commentary focus and editorial positions." Def.'s MTD at 22. It is rather amazing that Fox News served as the propaganda arm for former President Trump to push a false narrative that the election had been stolen, which served to

undermine a U.S. election and directly led to an insurrection on the U.S. Capitol, and Fox News tries to brush it off as "commentary focus and editorial positions." Fox News spills much ink arguing that there is no law that restricts how a news organization must report on the news, nor can there be, because the First Amendment guarantees that Congress shall make no such law abridging the freedom of the press. Def.'s MTD at 23. Without citing any legal authority, Fox News even goes so far to proclaim that "the public policy of the District of Columbia must be that news organizations are free to report on matters of public concern as they deem appropriate without the threat of harassing employee lawsuits seeking to editorialize disagreements." Def.'s MTD at 23. While these lofty platitudes may play well on a cable news program, they are not legal arguments. For if it were the case that Fox News had an absolute, unrestricted right to report anything it wished, whether false or not, or whether it contributed to unlawful activity, then the defamation lawsuit brought by Dominion would have been swiftly dismissed. But it was not. The same here, Fox News is liable because it terminated Donner for his complaining about conduct that violated a public policy.

And once again, in moving for dismissal, Fox News ignores the allegations in the FAC. Specifically, "Donner spoke out against Fox News' aid and support of this illegal conduct." FAC at ¶ 63. And Donner points to specific examples, such as "when Donner heard Fox News' false reporting of the insurrection at the Capitol while it was occurring, he called the Fox News' control room and stated, 'I'm your Capitol Hill Producer inside the Capitol where tear gas is going off on the second floor in the Ohio Clock corridor, rioters are storming the building, reports of shots fired outside the House Chamber. ***I don't want to hear any of this fucking shit on our air ever again because you're gonna get us all killed***.'" *Id.* Donner complained that "Fox [News] was causing the criminal conduct that posed a threat to his safety, as well as the safety of Members of Congress

and the public." *Id.*

Similarly, Fox News' attempt to downplay its role in the January 6th insurrection as mere editorial decisions falls flat. Not only did Fox News portray the insurrection as "peaceful" and a "huge victory for these protesters…[for] disrupt[ing] the system in an enormous way" after the insurrectionist had already breached the Capitol (FAC at ¶ 21), leading up to January 6th, Lachlan Murdoch instructed Fox News' CEO that "news guys have to be careful how they cover" one of President Trump's rallies as "some of the side comments are slightly anti, and they shouldn't be" because the "narrative should be this is a huge celebration of the president." FAC at ¶ 16. Similarly, both Donner and White House Correspondent Fisher were reprimanded for exposing the frivolity of the election fraud claims by former President Trump and his lawyers. FAC at ¶¶ 17-18.

Moreover, Fox News' attempt to portray itself as a news organization simply making commentary focus and taking editorial positions, having no role in the attempts to undermine the 2020 election or contributing to the January 6th insurrection ring hallow in light of the fact that it has been adjudicated that there is no dispute that Fox News made false statements with respect to the 2020 election. FAC at ¶ 16 (citing *U.S. Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1038 (Del. Super. Ct. 2023)); *see also U.S. Dominion, Inc.*, 293 A.3d at appendix to decision containing the false statements made by Fox regarding election fraud.[11]

And as a final point, rather than trying to right the wrong, Fox News tried to cover up the crimes that had been committed on January 6th by disseminating a conspiracy theory that January 6th was a "false flag operation [by the FBI and Antifa] to discredit Trump supporters." FAC at ¶¶ 29, 65. "Again, Donner complained about these falsehoods and even went as far to debunk them."

---

[11]    The Appendix to the decision is available here starting at page 82: https://courts.delaware.gov/Opinions/Download.aspx?id=345820

FAC at ¶ 65; FAC at ¶ 31 (complaint). As a result of these complaints made by Donner concerning matters of public policy, Fox News fired him. FAC at ¶ 67.

Thus, Donner has sufficiently pleaded a wrongful termination claim. Fox News' Motion should be denied.

### E.  PLAINTIFF HAS SUFFICIENTLY PLED CLAIMS UNDER THE D.C. SICK AND SAFE LEAVE ACT (Count V)

With respect to Donner's claim under the D.C. Sick and Safe Leave Act (D.C. Code § 32-531.01, *et seq*.), Fox News offers nothing more than a factual argument that is misplaced on a motion to dismiss.

#### 1.      Retaliation Claim – Sick and Safe Leave Act

The law prohibits an employer from retaliating against an employee for using sick leave. Specifically, D.C. Code § 32-531.08(b)(4) states, "an employer shall not discharge or discriminate in any manner against an employee because the employee:…(4) uses paid leave provided under this subchapter." In analyzing statutory retaliation claims under D.C. law, courts apply the *McDonnell Douglas* test, which requires that "a plaintiff must show that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection between the two exists." *Harbour v. Univ. Club of Washington*, 610 F. Supp. 3d 123, 135 (D.D.C. 2022) (citing *Bartolo v. Whole Foods Mkt. Grp., Inc*., 412 F. Supp. 3d 35, 44 (D.D.C. 2019) and *Holbrook v. Reno,* 196 F.3d 255, 263 (D.C. Cir. 1999)). A prima facie case of retaliation is easily satisfied here as "Fox News violated D.C. Code § 32-531.08(b)(4) by terminating Donner for using paid sick leave on September 26, 2022, as he recovered from his COVID-19 vaccine" FAC at ¶ 73.

*First*, with respect to **protected activity**, "Donner requested sick leave on September 26, 2022, in accordance with Fox News policy, prior to the start of his workday, and the request was

within 24 hours of the onset of his unexpected, emergent illness." *Id.* He was scheduled to work remote that day, so he texted his coworker and spoke with his supervisor to inform them that he would be out sick. *Id.* at ¶ 33. "[T]he request was prior to the start of his workday, and the request was within 24 hours of the onset of his unexpected, emergent illness." *Id.* Calling in sick, and using his accrued sick leave, is protected activity under the D.C. Sick and Safe Leave Act. The first element of retaliation, protected activity, is thereby sufficiently pled.

*Second*, there is no dispute that Fox News took an ***adverse action*** against Donner by firing him. *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) ("[a]n 'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"). Indeed, "discharge" is explicitly prohibited under D.C. Code § 32-531.08(b)(4) in response to an employee using paid leave.

*Third*, the ***causal connection*** between Donner's use of sick leave and his termination is easily satisfied. A causal connection (the third element) can be shown "by showing that the employer had knowledge of the employee's protected activity, and that the adverse ... action took place shortly after that activity." *Paschal v. Dist. of Columbia*, 65 F. Supp. 3d 172, 180 (D.D.C. 2014); *see also Alston v. D.C.,* 561 F. Supp. 2d 29, 43 (D.D.C. 2008) ("a close temporal connection between the protected activity and the adverse action can indeed support an inference of causation.").

Temporal proximity between the protected activity and the adverse action is *alone* sufficient to establish the causation requirement for the prima facie case of retaliation. *See Singletary v. Dist. of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection."); *Cones v.*

*Shalala,* 199 F.3d 512, 521 (D.C. Cir. 2000) ("[G]iven the circumstances of this case, the close temporal proximity of [the plaintiff's] discrimination complaints to the refusal to consider him for the position is sufficient to establish a causal connection."); *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985) ("The causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.").   One month has been held to be in close enough temporal proximity to demonstrate causation on a retaliation claim. *Singletary*, 351 F.3d at 525 (holding that "[w]hether such proximity was close enough it was 'a question for the finder of fact rather than the appellate court.'").

Here, the very next day after Donner engaged in protected activity by using sick leave, Donner's supervisor called Donner, yelling at him for "being irresponsible and challenged [his] work ethic." *Id.* at ¶ 34. His supervisor "faulted Donner for calling in sick the day before when he was recovering from the COVID vaccine." *Id.*   Like clockwork, ***two days after he engaged in protected activity***, on September 28, 2022, Fox News fired Donner because, according to Fox News, Donner was "late for work and did not show up for work" on September 26, 2022. *Id.* at 35.

There is no clearer cut case under the D.C. Sick and Safe Leave Act than this. With no place to turn, Fox News makes a factual argument by arguing that Donner did not comply with the notice provisions under D.C. law. *First*, Fox News ignores the allegations in the FAC wherein Donner alleged that he called in sick "prior to the start of his workday, and the request was within 24 hours of his unexpected, emergent illness." FAC at ¶ 33. This complies with the notice requirements of D.C. Code § 32-531.03 ("If the paid leave is unforeseeable, an oral request for paid leave shall be provided prior to the start of the work shift for which the paid leave is requested.

In the case of an emergency, the employer shall be notified prior to the start of the next work shift or within 24 hours of the onset of the emergency, whichever occurs sooner.").

Fox News then turns to its own sick leave policy. As Fox News acknowledges, under the Sick and Safe Leave Act, an employer may implement it own sick leave policy if it provides to employment at least equivalent to, or greater than, protections under the Sick and Safe Leave Act. *See* D.C. Code §§ 32-531.05, 32-531.07. And under Fox News' policy, an employee must give notice of his/her use of sick leave "as soon as possible." *See* Def.'s MTD at Ex. A. There is no requirement under Fox News' policy that the notice be in writing. Assuming this policy complies with D.C. law, the "as soon as possible" provision must necessarily be more generous than the provision under the D.C. Sick and Safe Leave Act. And so basic logic tells us, if Donner's notice complied with D.C. Code § 32-531.03, then it must have complied with Fox News' more generous policy.

Nevertheless, the question whether Donner's notice complied with the provisions in Fox News' policy is answered by the FAC. *See* FAC at ¶ 74 ("Donner requested sick leave on September 26, 2022, in accordance with Fox News' policy, prior to the start of his workday, and the request was within 24 hours of the onset of his unexpected, emergent illness."). Accepting those allegations as true, Donner has sufficiently pleaded a claim under the D.C. Sick and Safe Leave Act. Fox News' argument that Donner's notice was not "as soon as possible" is a factual argument it can make to a jury, but not on a Motion to Dismiss.

Thus, Defendant's Motion with respect to Count V must be denied.

### 2. Interference Claim - Sick and Safe Leave Act

In addition, under the D.C. Sick and Safe Leave Act, a "person shall not interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by" the D.C. Sick

and Safe Leave Act, which includes using paid sick leave." D.C. Code § 32-531.08(a). The so-called "interference" language under the D.C. sick and Safe Leave Act is nearly identical to the language of the FMLA. *See* 29 U.S.C. § 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."). And because "Courts in this circuit "regularly analyze both the FMLA and the DCFMLA under the same legal framework," *Thomas v. District of Columbia*, 227 F. Supp. 3d 88, 98 (D.D.C. 2016), cases interpreting the "interference" language under the FMLA is instructive. Under the FMLA, "an employer action with a reasonable tendency to 'interfere with, restrain, or deny' the 'exercise of or attempt to exercise' an FMLA right may give rise to a valid interference claim under § 2615(a)(1) even where the action fails to actually prevent such exercise or attempt." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 165 (D.C. Cir. 2015).

Here, Donner alleged that "Fox News violated D.C. Code § 32-531.08(a) by interfering with, and denying Donner, his right to use his accrued sick leave." FAC at ¶ 72. Specifically, by reprimanding Donner the day after he took leave, and questioning his work ethic, is conduct by Fox News that has a "reasonable tendency to 'interfere with, restrain, and deny" Donner's right to use his paid sick leave. By accusing Donner of being irresponsible and questioning his work ethic simply because he used his statutorily protected paid sick leave, Fox News interfered with Donner's rights under the D.C. Sick and Safe Leave Act. And this is certainly conduct that would easily dissuade an employee from asserting his rights under the law.

Thus, Donner has sufficiently pleaded an "interference" claim under the D.C. Sick and Safe Leave Act.

## V.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Fox News'

Motion to Dismiss.

Dated: February 7, 2024

Respectfully submitted,

Klaproth Law PLLC

/s/ Brendan J. Klaproth
Brendan J. Klaproth (D.C. Bar No. 999360)
Jesse C. Klaproth (Bar No. PA0063)
2300 Wisconsin Ave. NW, Suite 100A
Washington, DC 20007
Tel:    (202) 618-2344
Email: bklaproth@klaprothlaw.com
Email: jklaproth@klaprothlaw.com
*Attorneys for Plaintiff*