**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

JASON DONNER,

       *Plaintiff*,

   v.

FOX NEWS NETWORK, LLC,

       *Defendant*.

</td><td>

Civil Action No. 23-03401 (AHA)

</td></tr>
</table>

## Memorandum Opinion

Jason Donner sues his past employer, Fox News, claiming it unlawfully fired him for taking a sick day. Fox moves for summary judgment, arguing that the record developed during discovery shows it did not unlawfully fire him for taking the sick day. The court agrees and grants summary judgment to Fox.

**I.      Background[1]**

Donner sued Fox in 2023, asserting that Fox fired him because he failed to show up for work after calling in sick. *See* ECF No. 12 ¶¶ 69–74; *Donner v. Fox News Network, LLC*, No. 23-cv-3401, 2024 WL 1758689, at *5 (D.D.C. Apr. 24, 2024). According to Donner's allegations, he called in sick "prior to the start of his workday" at Fox, and a superior "told Donner that he was fired because he was late for work and did not show up for work (presumably referring to September 26, 2022 when Donner called in sick)." ECF No. 12 ¶¶ 33, 35. This court determined that Donner's allegations stated a claim for unlawful termination under the D.C. Accrued Sick and

---

[1]     The court views the evidence "in the light most favorable" to Donner and draws "all reasonable inferences" in his favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

Safe Leave Act ("Sick Leave Act"), D.C. Code § 32-531.01 *et seq.* Based on Donner's allegations, the court concluded that by calling in sick before his workday, Donner "did what millions of Americans do when they are feeling under the whether [sic] one morning," and the Sick Leave Act protected him from being terminated for it. *Donner*, 2024 WL 1758689, at *13. The court concluded that was the "only one of [Donner's] claims with legs," and allowed it to proceed to discovery. *Id.* at *12.[2]

The facts developed in discovery show a different picture—one in which Donner did not call his supervisor to report he was sick "prior to the start of his workday," ECF No. 12 ¶ 33, but rather slept in, knowing he was sick and telling a coworker, but not his supervisor, *see* ECF No. 33-2 ¶ 49; ECF No. 34-6 ¶¶ 64–66.[3]

According to the record, Donner started working at Fox in 2010 and became a Capitol Hill producer in 2018. ECF No. 33-2 ¶ 1. He was supervised by the director of news development, Nunu Japaridze. *Id.* ¶ 9. In September 2022, Donner got the COVID-19 vaccine. *Id.* ¶ 34. About a week later, on a Sunday, Donner was feeling ill and, according to Donner's dad, Donner "was going to have to call in sick the next day," said he "just can't go into work tomorrow," and "was going to report that he couldn't make it." *Id.* ¶ 37; *see* ECF No. 30-17 at 5, 7. Donner did not let his supervisor or anyone else at Fox know on Sunday that he wouldn't work the next day.

Donner also did not let his supervisor or anyone else at Fox know first thing on Monday morning. That morning, a coworker texted Donner about covering an event that day at 10:00 a.m. *See* ECF No. 33-2 ¶ 45. Donner texted back shortly before 10:00 a.m., saying: "I don't feel like

---

[2]   This case was initially assigned to the Honorable Christopher R. Cooper, who granted Fox's motion to dismiss in part, and was reassigned to the Honorable Amir H. Ali on November 27, 2024.

[3]   All citations to ECF No. 33-2 are to Donner's statement of genuine issues in response to Fox's statement of undisputed material facts.

talking all [sic] the phone" and "[m]y depression came back yesterday so I'm struggling." ECF No. 30-20 at 2; *see* ECF No. 33-2 ¶ 47. The coworker advised Donner to tell his supervisor, Japaridze. ECF No. 33-2 ¶ 48. Donner went back to sleep without contacting her. *Id.* ¶ 49. After 11:30 a.m., Donner texted the coworker that he would "call out sick and let [Ms. Japaridze] know." *Id.* ¶ 52. Around that time, Donner called Japaridze to say he was sick. ECF No. 34-6 ¶¶ 70–74. Japaridze said he could take the day off and "told him to just take care of himself." ECF No. 33-31 at 16.

After Donner returned to work the next day, Japaridze called him to discuss his failure to give notice of his absence in advance the previous day, among other things. ECF No. 33-2 ¶¶ 57–58. During the call, Donner was "emotional" and "defensive." *Id.* ¶ 59. Donner asked Japaridze: "How would you like it if I called you up out of the blue and told you you were a lousy manager"? *Id.* ¶ 61. Japaridze emailed Donner after the call, writing:

> It is absolutely unacceptable to raise your voice and keep yelling at your manager when I am trying to have a civilized, professional phone conversation with you. I definitely don't deserve being called a 'lousy manager', being screamed at and being hang up on. If you don't understand why you need to give your coworkers and your manager heads up when you don't show up for work, I honestly don't know how to make you understand it. You can NEVER talk to me or as a matter of fact to anyone at FOX like this. We will have another meeting to follow up on this unacceptable behavior.

*Id.* ¶ 62. Japaridze also told Fox's Washington bureau chief, Bryan Boughton, and the company's senior vice president of human resources, Nicolle Campa, about the call. *Id.* ¶¶ 65–67. Boughton responded that Donner's behavior was "unacceptable." *Id.* ¶ 75.

Boughton, with Japaridze, decided to fire Donner. *Id.* ¶ 77. Campa put together talking points that could be used to explain the termination to Donner and shared them with Japaridze and Boughton. *Id.* ¶ 81. The next morning, Boughton, Japaridze, and Campa met with Donner, and Boughton told Donner he was fired. *Id.* ¶¶ 84–86. Boughton told Donner there were "a number of

3

reasons" for it, including that Donner "was late" and "missed work." *Id.* ¶¶ 88–89. Donner later could not recall the specific reasons he was given, but testified that it "could have" included his conversation with Japaridze and prior behavior. *Id.* ¶ 90.

Based on the record that has developed, Fox moves for summary judgment on Donner's Sick Leave Act retaliation claim. ECF No. 30.

## II.    Discussion

The court must grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Fox argues Donner has failed to show any genuine issue of material fact that would allow him to prevail on his Sick Leave Act retaliation claim, and the court agrees. The Sick Leave Act forbids an employer from firing or discriminating against an employee because they take paid leave under the Act. D.C. Code § 32-531.08(b)(4). To take paid leave under the Act, an employee has to give their employer notice "as early as possible, in advance of the paid leave." *Id.* § 32-531.03. "If the paid leave is unforeseeable, an oral request for paid leave shall be provided prior to the start of the work shift for which the paid leave is requested." *Id.* "In the case of an emergency, the employer shall be notified prior to the start of the next work shift or within 24 hours of the onset of the emergency, whichever occurs sooner." *Id.* The Act allows employers to adopt more favorable policies; here, Fox's policy requires employees who "are unable to work due to illness

4

or injury" to "contact [their] supervisor as soon as possible and no later than two hours after [their] normal starting time." ECF No. 33-2 ¶ 4; *see* D.C. Code §§ 32-531.05, 32-531.07.

To establish a prima facie case of retaliation under the Sick Leave Act, "a plaintiff must show that (1) she engaged in statutorily protected activity; (2) her employer took an adverse personnel action against her; and (3) a causal connection between the two exists." *Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123, 135 (D.D.C. 2022) (quoting *Holbrook v. Reno*, 196 F.3d 255, 263 (D.C. Cir. 1999)). Fox argues that the unrebutted evidence shows Donner did not engage in statutorily protected activity in the first place—that, rather than timely reporting his sick leave, Donner simply did not show up in the morning and waited until near midday to tell his supervisor that he would not be coming in. *See* ECF No. 30-1 at 23–25. Fox also argues that, even if Donner's activity was protected by the Act and he has established a prima facie case of retaliation, it fired him for a legitimate, non-retaliatory reason—namely, because of his unprofessional behavior, including the conversation with his supervisor after he did not show up for work. *See id.* at 25–35.[4]

Contrary to Donner's allegations at the pleading stage, unrebutted evidence shows Donner did not give notice that he was sick "as early as possible, in advance of the paid leave" or "as soon as possible" as required by the Sick Leave Act and Fox's leave policy, respectively. D.C. Code § 32-531.03; ECF No. 33-2 ¶ 4. The record shows that, on the morning at issue, Donner did not go to work and did not tell his supervisor he was sick until after 11:30 a.m., at the earliest. *See*

---

[4]    The parties agree the *McDonnell Douglas* burden-shifting framework applies here, and courts have applied the framework to cases under the Sick Leave Act. ECF No. 30-1 at 21; ECF No. 33-1 at 24–30; *see Sobot v. Clean the World Found. Inc.*, No. 22-cv-1846, 2024 WL 4119389, at *6 (D.D.C. Sept. 9, 2024). Under that framework, once the defendant has asserted a non-retaliatory justification for its action, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation." *Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009).

ECF No. 33-2 ¶ 49; ECF No. 30-20. This was so even though, according to his dad, Donner had indicated the day before that he "was going to have to call in sick," "just can't go into work tomorrow," and "was going to report that he couldn't make it." ECF No. 33-2 ¶ 37. And it was so even though he texted a coworker the morning he missed work "to let her know that he would be out sick," and the coworker told Donner to tell his supervisor. ECF No. 34-6 ¶¶ 65–66; ECF No. 33-2 ¶ 47; ECF No. 30-20 at 2. Donner instead went back to sleep and did not tell his supervisor until about two hours later. ECF No. 33-2 ¶ 52; ECF No. 30-20. The record accordingly contradicts Donner's earlier allegation that he provided notice "prior to the start of his workday" and leaves no genuine issue as to whether Donner gave notice of his need for sick leave "as early as possible, in advance of the paid leave" or "as soon as possible." ECF No. 12 ¶ 33; D.C. Code § 32-531.03; ECF No. 33-2 ¶ 4.[5]

Donner's arguments to the contrary are not persuasive. First, he argues the notice he gave suffices under the Act because his supervisor testified in her deposition that she allowed Donner to take leave after he called in and that Donner "handled it appropriate in calling in sick." ECF No. 34-6 ¶¶ 74–75; *see* ECF No. 33-1 at 20. But even construing that testimony in Donner's favor and accepting that Donner's supervisor understood him to be giving appropriate notice at the time, the undisputed evidence in the record shows that Donner did not contact her as soon as possible.

Second, Donner argues the court should not consider his dad's testimony that Donner knew he planned to call in sick the day before, saying the comments are "taken out of context" and that

---

[5]    Donner argues the text messages from his coworker are "inadmissible hearsay." ECF No. 33-2 ¶¶ 45, 48. But Donner does not challenge the admissibility of his own texts telling his coworker he was sick roughly two hours before he told his supervisor. Indeed, Donner himself asserts "he texted [his coworker] back to let her know that he would be out sick." ECF No. 34-6 ¶ 65. The court need not analyze whether any of the particular texts from Donner's coworker are hearsay or could be presented in an admissible form at trial because they are not essential to the court's summary judgment analysis.

his dad "was clearly confused by the questions and the sequence of events." ECF No. 33-1 at 21 n.8; ECF No. 33-2 ¶ 37. Donner points to his dad's testimony that his call with Donner happened "the day before he had had his shot and he was sick" and "was going to have to call in sick the next day," and says that the call in question happened a week earlier, before Donner received the shot, and not the day before Donner called in sick. ECF No. 30-17 at 5; ECF No. 33-2 ¶ 37. But Donner does not provide evidence to dispute that the phone call with his dad actually took place the day before he called in sick. *See* ECF No. 33-2 ¶ 37. And Donner's reading conflicts with the rest of his dad's testimony, which makes clear his dad thought Donner felt sick because "he was having a negative reaction" to the shot. ECF No. 30-17 at 7. In any event, even disregarding Donner's call with his dad altogether, the undisputed evidence shows Donner did not tell his supervisor he was sick on Sunday or early Monday morning, did not show up to work, told his coworker (but not his supervisor) that he was unwell mid-morning, went back to sleep, and told his supervisor only around midday. On those facts, Donner did not contact his supervisor as soon as possible, as required for his activity to be protected by the Sick Leave Act.

Third, Donner argues that his notice sufficed because, while he "did not have a formal start time, he still called in sick within two hours of the start time listed" on company software for that day, 10 a.m. ECF No. 33-1 at 21; *see* ECF No. 33-2 ¶ 47. But Fox's policy required Donner to notify his supervisor "as soon as possible and no later than two hours after [his] normal starting time." ECF No. 33-2 ¶ 4. That the policy adopts an outer limit of two hours does not discharge the requirement to give notice as soon as possible, which Donner did not do according to unrebutted evidence.

Fourth, Donner argues his need for paid leave was an "emergency" under the Act, in which case the Act allows an employer to be "notified prior to the start of the next work shift or within

24 hours of the onset of the emergency, whichever occurs *sooner*." D.C. Code § 32-531.03 (emphasis added); *see* ECF No. 33-1 at 21–22. Donner asserts this was an emergency because he could "barely turn over and get out of bed." ECF No. 33-1 at 22. But Donner does not explain how that was an emergency or identify facts from which one could conclude that this was an emergency within the meaning of the statute. Indeed, the statute contemplates circumstances short of an emergency in which illness is "unforeseeable," and the unrebutted evidence shows Donner's need to take sick leave was not unforeseeable—he had let someone else "know that he would be out sick" hours before he called out sick, if not a whole day before when he told his dad. ECF No. 34-6 ¶¶ 65–66; *see* D.C. Code § 32-531.03. And even assuming one could conclude Donner's illness was an emergency within the meaning of the Act, Donner did not notify his supervisor that he would be out "prior to the start of the next work shift," but rather hours into the workday. D.C. Code § 32-531.03.[6]

Donner did not comply with the Act or Fox's policy when he requested to take sick leave. Accordingly, his conduct was not protected by the Act.[7]

---

[6]    Donner also argues a jury could find he provided timely notice because "he did not have a formal work shift." ECF No. 33-1 at 22. But the record shows that Donner "had standing 9:30 a.m. telephone calls" on most days of the week (even if not on the day he called out specifically), ECF No. 33-2 ¶ 41, and sometimes started his workday "as early as 7:00 a.m.," *id.* ¶ 39. And Donner himself states that his workday was set to start at 10 a.m. on the day he called in sick, according to company software. Donner accordingly fails to raise a genuine and material issue as to whether he called in sick before his work shift.

[7]    Because the record shows that Donner's conduct was not protected by the Act in the first place, the court need not address Fox's alternative argument that it fired him because of his heated conversation with Japaridze—not because he took leave—and that Donner has produced no evidence showing Fox's asserted basis for firing him is pretextual. *See* ECF No. 30-1 at 25–35. The court also need not address Fox's argument that liquidated and punitive damages are not available. *See id.* at 35–41.

8

**III.    Conclusion**

For these reasons, Fox's motion for summary judgment is granted. The clerk of court is directed to close the case.

A separate order accompanies this memorandum opinion.

_____

AMIR H. ALI
United States District Judge

Date:   March 30, 2026